# IN THE COURT OF APPEALS OF IOWA

No. 18-1796
Filed December 19, 2018

**IN THE INTEREST OF L.W., M.W., and I.C.-R.,**
**Minor Children,**

**D.C., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.

    A mother appeals the termination of her parental rights to her children. **AFFIRMED.**

    Martha M. McMinn, Sioux City, for appellant mother.

    Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

    Marchelle M. Denker of State Public Defender Office, Sioux City, guardian ad litem for minor children.

    Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her three children. She does not dispute that the requirements for termination have been satisfied. Instead, she claims the State failed to make reasonable efforts to reunite her with the children by denying her visitation with the two oldest children. We review her claim de novo. *See In re A.*S., 906 N.W.2d 467, 472 (Iowa 2018).

Iowa law requires the Iowa Department of Human Services (DHS) to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9). The requirement "is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). What constitutes reasonable efforts depends on the circumstances of the case, but it "includes visitation designed to facilitate reunification while providing adequate protection for the child." *Id.* "However, the nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

The mother has a long history of involvement with the DHS, extending back to 2006. The juvenile court terminated the mother's parental rights to her first child before the children at issue were born, and concerns about the mother's ability to provide a safe and appropriate home for the children have continued. Concerns have been raised about the children's physical injuries, poor nutrition, and exposure to domestic violence. The juvenile court removed the children from the

mother's care and adjudicated them to be children in need of assistance in 2017 after the child's stepfather sexually abused the two oldest children. In spite of the plethora of services offered to her in the year that followed, the mother failed to resolve her parenting deficiencies. In addressing the mother's argument that reasonable efforts had not been made toward reunification because she had not been allowed visits with the children, the juvenile court noted,

> These children have been removed from parental custody since April 19, 2017, despite efforts to keep the children in the home through a safety plan. [The mother] argues that reasonable efforts have not been made toward reunification because she has not been allowed visits with the children. Visits should be child-focused, not parent-focused. Children should not be "forced" to attend visits with a parent who they view as someone who did not protect them from the trauma they experienced. Visits are also a small portion of a reunification plan. [The mother] continued to associate with unhealthy men through websites, revealing her name and placement of employment, thereby exposing herself to possible further abuse, as well as possible abuse of her children should they be returned to her care. These children have not been returned to parental custody on even a trial home placement since their removal. There is clear and convincing evidence that these children cannot be returned to the custody of their parents as provided in Iowa Code section 232.102 at the present time or at any time in the near future. It is clear to this court that [the mother] is not capable of implementing what is being taught to her in therapy. She has no protective capacity.
>
> There is also clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the children within a reasonable period of time. [The mother] has been the recipient of a plethora of services throughout her life. It is clear she learned nothing. It has been 15 months and [the mother] has continued to associate with unhealthy men. Despite participating in therapy to address abuse and boundaries, nothing has changed.

Visits with the mother were a trigger for the two older children, essentially "re-traumatizing" them. After a December 2017 family team meeting, the decision was made to stop visits with the mother until it was determined by the children's

therapists that the children would be less traumatized by visits with their mother. One of the children had a "rough night" after a March 2018 visit. Providing the mother with visitation would not have remedied these concerns. Instead, the record clearly indicates that visitation would have been contrary to the children's best interests. Accordingly, we affirm.

**AFFIRMED.**