**IN THE COURT OF APPEALS OF IOWA**

No. 20-1707
Filed March 17, 2021

**IN THE INTEREST OF S.G. and E.Q.,**
**Minor Children,**

**M.Q., Father,**
       Appellant,

**V.D., Mother,**
       Appellant.
_____

       Appeal from the Iowa District Court for O'Brien County, David C. Larson,

District Associate Judge.


       A mother and father each appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


       Tobias A. Cosgrove, Sibley, for appellant father.

       Scott A. Johnson of S.A. Johnson Law, PLC, Spencer, for appellant mother.

       Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

       Christopher Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and

guardian ad litem for minor children.


       Considered by Tabor, P.J., May, J., and Danilson, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**DANILSON, Senior Judge.**

A mother and father each appeal the termination of their parental rights. There is sufficient evidence to support termination of the mother's parental rights, and the State engaged in reasonable efforts to reunite her with the children. There is also sufficient evidence regarding termination of the father's parental rights, it would not be in the children's best interests to grant an extension of time, and none of the exceptions to termination should be applied. We affirm the juvenile court's decision on both appeals.

### I.    Background Facts & Proceedings

V.D., mother, and M.Q., father, are the parents of S.G., born in 2010, and E.Q., born in 2011. E.Q. has special needs; she is nonverbal and has been diagnosed with autism. The children were removed from the parents' care on October 30, 2018, after the mother left them home alone overnight while she was in jail. The father was living in South Dakota and had limited contact with the children.

The children were adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2018). An expedited interstate compact on the placement of children home study was ordered. The South Dakota home study did not recommend placement with the father until various "diminished protective capacities have been addressed and a new request" was submitted. There were concerns about the father's level of commitment to the children based on his inconsistency in participating in visitation. Also, when he did attend visitation, he minimally interacted with the children. There was also a concern that he did not comprehend how his decisions impacted the children's well-being. Furthermore,

the father had limited knowledge about the children. In particular, he lacked an understanding of the extent of E.Q.'s special needs.

In the dispositional order filed in January 2019, the court noted E.Q. needed a higher level of care than the parents were able to provide at that time. The mother participated in supervised visits, which eventually progressed to semi-supervised visits. She was late returning the children on one occasion and did not inform the Iowa Department of Human Services (DHS) where she was. DHS then required the mother to have supervised visits. The father was inconsistent in attending visitation. The parents were not involved in the children's therapy or schooling.

On November 21, 2019, the State filed a petition seeking termination of the parents' rights. The termination hearing was held on February 14, June 19, June 26, and September 11, 2020. The mother was sent to prison on August 20, 2020, and is expected to be released in September 2021. The father stopped participating in visits in July 2020.

The court found the children could not be returned to the care of the parents, as the parents had not demonstrated they could care for the children on a long-term basis. The court determined the State engaged in reasonable efforts to reunite the parents with the children. The court terminated the parents' rights under section 232.116(1)(e) and (f) (2019). The court concluded termination was in the children's best interests and none of the exceptions found in section 232.116(3) should be applied. Each parent appeals the termination order.

## II.      Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The State must prove its allegations for termination by clear and convincing evidence.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.*  Our primary concern is the best interests of the children.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.     Mother

**A.**      The mother contends there is not sufficient evidence in the record to support termination of her parental rights under section 232.116(1)(e).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination."  *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015).

The mother's parental rights were terminated under section 232.116(1)(e) and (f).  The mother's failure to challenge the termination under section 232.116(1)(f) permits affirming termination on this ground.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (noting that when a parent does not dispute a ground for termination, the court does not need to engage in further analysis).  However, if we were to address the issue, we would find the record contains clear and convincing evidence to support termination under section 232.116(1)(f).[1]  The

---

[1] A parent's rights may be terminated under section 232.116(1)(f) on a showing:
     (1) The child is four years of age or older.
     (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

children were more than four years old, adjudicated CINA, removed from the mother's care for more than twelve months, and cannot be safely returned to the mother's care. *See* Iowa Code § 232.116(1)(f).

**B.** The mother also claims the State did not engage in reasonable efforts to reunite her with the children. She contends DHS did not take into account her cultural concerns about the children's hair. The mother claims that it was because she was attempting to fix the children's hair that she was late returning the children, and this caused DHS to return to supervised visitation rather than semi-supervised visitation. But the caseworker testified that the DHS appreciated the family's position that it was "something very dear to them to have the hair worked on and that it can take hours and hours." The worker testified that they discussed the issue at family team meetings and the DHS made efforts to accommodate the cultural concern.

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (quoting *C.B.*, 611 N.W.2d at 493). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *Id.* (quoting *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996)).

---

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

DHS did not change the mother's visitation back to supervised solely because she returned the children late one time. The mother did not inform DHS she was going to be late, and DHS was unaware of where she was with the children. Thus, the problem did not arise from insensitivity by DHS, but instead was due to the mother's failure to keep in communication with DHS. The mother has not shown DHS failed to engage in reasonable efforts to reunite her with the children.

We conclude the juvenile court properly terminated the mother's parental rights.

### IV. Father

**A.** The father claims there is not sufficient evidence in the record to support termination of his parental rights. "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *T.S.*, 868 N.W.2d at 435. We will consider section 232.116(1)(e).[2]

---

[2] For termination under section 232.116(1)(e), the State must show:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with

The father disputes the second element, arguing the child was not removed from his care because he never had care of the child. He asserts section 232.116(1)(e) was not applicable in this case. We have frequently concluded removal of the child from one parent is sufficient to support the termination of the other parent. *See, e.g.*, *In re R.P.*, No. 18-2002, 2019 WL 1055739, at *2 (Iowa Ct. App. Mar. 6, 2019) (interpreting similar removal language under section 232.116(1)(h)(3) and collecting cases), *further review denied* (Mar. 28, 2019). Here, the children were removed from the mother's care and the State is not required to show the children were removed from the father's care.

Also, the home study raised concerns about the father's level of commitment to the children due to his inconsistency in participating in visitation. Even when he attended visitation, he minimally interacted with the children. The social workers conducting the home study were concerned that he did not comprehend how his decisions impacted the children's well-being. Furthermore, the father had limited knowledge about the children and, in particular, lacked an understanding of the extent of E.Q.'s special needs. The foster parents kept a call log, and the father only called the children about once a month. The evidence shows the father did not establish and maintain a place of importance in the children's lives. *See* Iowa Code § 232.116(1)(e)(3). We determine the juvenile court properly determined that the elements of section 232.116(1)(e) were met.

**B.** The father claims it would be in the children's best interests to grant him an additional six months to work toward reunification with the children. The

the child, and requires that the parents establish and maintain a place of importance in the child's life.

juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that CINA proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b). *Id.* § 232.117(5). The court may continue the proceedings for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The father recognizes that the primary problems were "his inconsistent visits and lack of contact with the children's school and therapist." He does not assert how these problems could be resolved within six months. The juvenile court found "the children cannot be returned to the custody of either parent at the present time or within the reasonably foreseeable future without being subjected to the adjudicatory harm defined in section 232.2(6)(c)(2)." We agree with the juvenile court's assessment. There is not clear and convincing evidence to show "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* The children have been in foster care since the case began in October 2018, and over twenty-two months had passed by the time the termination hearing had concluded. The father has had ample time to step up to the plate and show signs of progress. It would not be in the children's best interests to further extend this case. The children need permanency that can only be achieved through termination of the parents' rights.

**C.** The father only claims the juvenile court should have applied the exception to termination found in section 232.116(3)(c). This exception applies when "[t]here is clear and convincing evidence that the termination would be

detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

"The factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *Id.* (citing *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)).

The juvenile court determined none of the exceptions in section 232.116(3) should be applied in this case. The evidence does not support a finding that it would be detrimental to the children to terminate the father's parental rights. He has not been a consistent presence in their lives. We agree no exception should be applied here.

We find the court properly terminated the father's parental rights. We affirm the decision of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**